IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 8:08CV122 |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| FIRST NATIONAL OF NEBRASKA, | ) | |
| INC., and FIRST NATIONAL BANK | ) | |
| OF COLUMBUS, | ) | |
| | ) | |
| Defendants. | ) | |

The United States Department of Housing and Urban Development ("HUD") is seeking to recover from First National Bank of Columbus ("FNB") the sum of $80,199.84 in federal funds that had been deposited in the bank by the Columbus Housing Authority ("CHA"). HUD claims that FNB converted these funds, and breached a general depository agreement, when it exercised a setoff against CHA's bank accounts in partial satisfaction of defaulted loans.[1] FNB contends that it had a perfected security interest in the deposited funds, with priority over HUD.

The parties have filed cross-motions for summary judgment, but defendants' counsel has filed an affidavit, pursuant to Federal Rule of Civil Procedure 56(f), in which he states that "the Defendants believe that if summary judgment is granted in favor of the Plaintiff on the legal issue of the parties' respective priorities in the Columbus Housing Authority funds, then discovery will be necessary as to elements 2, 3, and 4 of the Plaintiff's first claim, element 4 of the Plaintiff's second claim, and the Defendant's 3rd, 6th, 7th, and 8th affirmative defenses, as listed in the Report of the Parties' Planning Conference. In addition, the Defendants believe that if the Plaintiff

---

[1] HUD concedes that it does not have an actionable claim against FNB's parent corporation, First National of Nebraska, Inc.

should prevail on the legal issue [of the parties' respective priorities in the Columbus Housing Authority funds], then discovery will be necessary as to Plaintiff's Material Facts 5, 6, 9, 18, and 19, as set forth in the Plaintiff's Brief in Support of Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment." (Filing 30-3, ¶¶ 2-3 (paragraph numbering omitted).) HUD states that it "has no objection to the Bank's request that if the Court grants the Plaintiff's Motion for Summary Judgment, that the Court allow the Bank to conduct discovery concerning the facts identified in its brief, together with those matters identified in the parties' planning report." (Filing 34, p. 1 (citations omitted).)

Elements 2, 3, and 4 of HUD's first claim (conversion) require proof that HUD "had an interest in $80,199.84 of the funds in the CHA accounts at the time of the setoff," that "HUD had a right to possession of the HUD program funds on deposit in the CHA accounts and continues to have a right to the recovery and possession of the HUD program funds," and that "FNB, by its execution of the General Depository Agreement [("GDA")] with the CHA on or about January 8, 1993, was on notice of the nature and purpose of the federal funds in the CHA accounts and HUD's interest in said funds." (Filing 14, pp. 1-2.) Element 4 of HUD's second claim (breach of the GDA) requires proof that "FNB was on notice that the funds provided by HUD to the CHA were federal funds for the specific purpose of developing and operating low income housing projects as authorized by the Housing Act." (Filing 14, p. 2.) The affirmative defenses requiring additional discovery are that HUD (1) "did not have an interest in the funds," (2) "is estopped from claiming an interest in the CHA funds . . . and from denying the priority of the Defendant's security interest and setoff right," (3) "voluntarily waived . . . any interest it may have had in the funds . . . and any priority it may have otherwise had over the Defendant's interest," and (4) "may not recover to the extent the doctrine of laches applies." (Filing 14, pp. 4-5.) The material facts stated in HUD's brief that "the Defendants are without sufficient information to admit or deny" include the source of the funds that were deposited in each of CHA's accounts at FNB, and the extent of HUD's interest in those accounts.

2

With all due respect, how can the parties seriously expect the court to decide between their competing motions with all of these open issues? While FNB claims that the court is only being asked to determine "the legal issue of the parties' respective priorities in the Columbus Housing Authority funds," HUD even disputes that this is a lien priority contest. It instead "maintains that the federal HUD funds in the hands of the grantee, CHA, remained the property of the federal government and that under the Supremacy Clause and absent a waiver of sovereign immunity, such funds were not subject to the Bank's setoff." (Filing 34, p. 2.)

To the extent that FNB is seeking a determination that HUD's sovereign immunity argument necessarily fails as a matter of law, it will be disappointed. As stated in *U.S. Dept. of Housing and Urban Development v. K. Capolino Const. Corp.,* No. 01 Civ. 390(JGK), 2001 WL 487436, at *4 (S.D.N.Y. May 7, 2001), (granting preliminary injunction to prevent garnishment of public housing authority's bank accounts containing funds provided by HUD):

> The Supreme Court held in *Buchanan v. Alexander,* 45 U.S. (4 How.) 20-21, (1846), that federal funds in the hands of a grantee remain the property of the federal government unless and until expended in accordance with the terms of the grant and are not subject to attachment or garnishment. That decision, despite its age, remains the law today. *See In re Joliet-Will County Community Action Agency,* 847 F.2d 430, 432 (7th Cir.1988); *City of New York v. Sullivan,* No. 91 Civ. 2959, 1993 WL 8184, at *11 (S.D.N.Y. Jan. 4, 1993); *Sobol v. Haitian Academy,* No. 88 Civ. 1372, 1990 WL 37901, at *1 (N.D.N.Y. March 23, 1990). Unless the federal government consents, sovereign immunity prevents federal funds from being subject to attachment or garnishment proceedings. *See, e.g., Neukirchen v. Wood County Head Start, Inc.,* 53 F.3d 809, 812-14 (7th Cir.1995). The United States has an interest in federal funds disbursed to a non-governmental entity for a federal purpose and such interest is not subject to state judicial process without the consent of the United States. *See Palmiter v. Action, Inc.,* 733 F.2d 1244, 1247-48 (7th Cir.1984); *Henry v. First Nat'l Bank of Clarksdale,* 595 F.2d 291, 308-09 (5th Cir.1979). In determining whether the United States has an interest in particular funds, that have been disbursed to a

3

grantee, courts have considered whether the funds were dispensed according to conditions, whether the United States retains a reversionary interest in the funds, and whether the United States employs accountability procedures to ensure that the grants are being spent as directed. *See, e.g., Henry,* 595 F.2d at 308-09.

FNB's reliance upon *United States v. Kimbell Foods*, 440 U.S. 715 (1979), is misplaced. The Supreme Court granted certiorari in *Kimbell Foods* "to determine whether contractual liens arising from certain federal loan programs take precedence over private liens, in the absence of a federal statute setting priorities." *Id.*, at 718. While the Supreme Court's decision in that case supports FNB's view that any question of lien priority in the present case should be determined with reference to the Nebraska Uniform Commercial Code, it has no applicability if federal law (as summarized above in the *Capolini* decision) prohibited the bank from obtaining a valid security interest in the deposited funds. The essential distinction is that the present case involves federal grant money, as opposed to loans.

Because FNB has failed to establish that it has an enforceable security interest in the funds that CHA deposited in the bank, its motion for summary judgment will be denied, but its parent corporation will be dismissed from the action. Because the parties have agreed that FNB should be allowed to conduct discovery, HUD's motion for summary judgment also will be denied.

However, pursuant to Federal Rule of Civil Procedure 56(d)(1), the court finds that the following material facts are not genuinely at issue and shall be treated as established in the action:

1. The United States Department of Housing and Urban Development ("HUD") is the principal federal agency responsible for administering and regulating programs and industries concerned with the nation's housing needs, economic and community development, and fair housing opportunities. H.R. Rep. No. 105-610 (1998). (Filing 25, p. 2, ¶¶ 1, 2; filing 29, p. 1, ¶ 1.)

4

2. First National Bank of Columbus ("FNB"), is a national bank located in Columbus, Nebraska. (Filing 19, p. 2, ¶ 1; filing 25, p. 2, n. 2.)

3. First National of Nebraska, Inc. ("FNNI"), is a financial services holding company located in Omaha, Nebraska and is the corporate parent of FNB. (Filing 19, p. 2, ¶ 2; filing 25, p. 2, n. 2.)

4. The complaint contains no allegations relating to any actions or omissions of FNNI that would cause FNNI to be liable to HUD. FNNI was not involved in any of the events alleged in the complaint. (Filing 19, p. 2, ¶ 3; filing 25, p. 2, n. 2.)

5. The Columbus Housing Authority ("CHA") is a public housing authority located in Columbus, Nebraska and is a municipal corporation created pursuant to the Nebraska Housing Agency Act, Neb. Rev. Stat. § 71-1572 to 71-15,168. (Filing 19, p. 2, ¶ 4; filing 25, p. 2, n. 2.)

6. In or about 1999, CHA began developing the Crown Villa, a sixty-unit multifamily housing development for seniors, located in Columbus, Nebraska. (Filing 19, p. 2, ¶ 7; filing 25, p. 2, n. 2.)

7. CHA borrowed part of the site's purchase price from FNB and, in that connection, executed a promissory note in FNB's favor on July 10, 2000, in the amount of $34,185.28. FNB internally refers to CHA's obligation under this note as Loan 18729. (Filing 19, p. 3, ¶ 9; filing 25, p. 2, n. 2.)

8. On December 28, 2000, CHA obtained an operating line of credit in the amount of $55,000.00 from FNB. FNB internally refers to CHA's obligation under this note as Loan 19127. (Filing 19, p. 3, ¶ 10; filing 25, p. 2, n. 2.)

9. Loans 18729 and 19127 were ultimately combined into Loan Number 18729 on September 29, 2004 and CHA on that date executed a new promissory note to reflect the combined remaining balance of $81,023.60. (Filing 19, p. 3, ¶ 11; filing 25, p. 2, n. 2.)

10. On September 19, 2002, CHA executed a Promissory Note and Continuing Letter of Credit Agreement ("Letter of Credit Agreement") pursuant to which FNB issued a letter of credit for the benefit of United Nebraska Bank on the same date. A true and correct copy of the Letter of Credit Agreement is attached to the Affidavit of James Bator (filing 20-2) as Exhibit E. FNB refers to CHA's obligation under the

Letter of Credit Agreement internally as Letter of Credit 177. (Filing 19, p. 3, ¶ 12; filing 25, p. 2, n. 2.)

11. United Nebraska Bank called the letter of credit, and FNB honored its commitment and paid United Nebraska Bank $100,000.00, thereby resulting in CHA being obligated to FNB under the Letter of Credit Agreement in the amount of $100,000.00. At that point, FNB changed the number designation for the obligation from 177 to 21216. CHA executed a promissory note dated September 29, 2004, in the amount of $100,000.00, in connection with its obligation under the Letter of Credit Agreement. A true and correct copy of the promissory note relating to the Letter of Credit Agreement is attached to the Affidavit of James Bator (filing 20-2) as Exhibit F. (Filing 19, pp. 3-4, ¶ 13; filing 25, p. 2, n. 2.)

12. CHA defaulted on its obligations to FNB, and on August 22, 2005, FNB executed a setoff against funds CHA had on deposit with FNB in the amount of $88,075.11 in partial payment of amounts due under Loans 18729 and 21216. The following are the account numbers, the amounts in each account, and the respective dates the accounts were opened for all of the accounts against which FNB offset CHA's obligations:

|     | Account Number | Amount Offset | Date Opened |
| --- | --- | --- | --- |
| a. | Account #23477: | $56,256.63 | 3/09/1982 |
| b. | Account #33332: | $6,677.22 | 6/22/2000 |
| c. | Account #33340: | $6,547.78 | 6/22/2000 |
| d. | Account #1003649: | $2,297.18 | 1/13/1983 |
| e. | Account #504405: | $16,296.30 | 9/24/1996 |

(Filing 19, p. 4, ¶ 14; filing 25, p. 2, n. 2, p. 5, ¶ 17 & n. 6; filing 29, p. 1, ¶ 1.)

13. HUD filed this case on March 19, 2008, seeking to recover a portion of the CHA funds that FNB offset. (Filing 19, p. 4, ¶ 15; filing 25, p. 2, n. 2.)

14. HUD finances and administers the nation's Public Housing and Housing Choice Voucher (formerly known as Section 8) assistance programs through formulated grants to local public housing agencies ("PHAs") such as CHA. Neither the Public Housing program nor the Housing Choice Voucher program is a loan program. United States Housing Act of 1937, 42 U.S.C. §§ 1437 et seq., (the "1937

Act"). The federal funds are allocated by Congress, disbursed by HUD, and transferred to housing authorities by the United States Treasury via wire transfer. (Filing 25, pp. 2-3, ¶ 3 & n. 3; filing 29, p. 1, ¶ 1.)

15. On or about April 13, 1992, CHA executed a Declaration of Trust which was recorded with the Office of the Register of Deeds for Platte County, Nebraska on or about April 29, 1992. (Filing 25, p. 3, ¶ 4; filing 29, p. 1, ¶ 1.)

16. CHA was required to execute a General Depository Agreement ("GDA") with a selected depository for all funds and investment securities received by or held for the CHA in connection with the development, operation and improvement of those housing related projects under contract with HUD. (Filing 25, p. 3, ¶ 7; filing 29, p. 1, ¶ 1.)

17. On or about January 8, 1993, CHA executed a GDA with FNB, a true and correct copy of which is attached to the Affidavit of James Bator (filing 20-2) as Exhibit A. (Filing 19, p. 2, ¶ 5; filing 25, p. 2, n. 2.)

18. The preamble to the GDA states that HUD has entered into contracts with the PHA for the purpose of providing financial assistance to develop and operate lower income housing projects, as authorized by the 1937 Act, and that under the terms of the contract, the PHA is required to select a depository whose deposits or accounts are insured. (Filing 25, pp. 3-4, ¶ 8; filing 29, p. 1, ¶ 1.)

19. The terms of the GDA may not be modified by either party without HUD's written approval, and the GDA expressly identifies HUD as an intended third-party beneficiary who may sue to enforce its provisions and to recover damages. (Filing 25, p. 4, ¶ 10; filing 29, p. 1, ¶ 1.)

20. By executing the GDA, FNB knew of HUD's third party beneficiary status, of HUD's stated right to sue to enforce the GDA's provisions, and of HUD's ability to recover damages for a failure to carry out its terms. (Filing 25, p. 4, ¶ 11; filing 29, p. 1, ¶ 1.)

21. On or about January 31, 1996, HUD and CHA entered into a Consolidated Annual Contributions Contract ("ACC"). It superseded any earlier ACCs. CHA was not required to execute a new GDA for each new ACC. As such, while the 1996

ACC post-dates the 1993 GDA, it is the ACC that was in effect at the time of the setoff.  (Filing 25, p. 4, ¶ 12 & n. 5; filing 29, p. 1, ¶ 1.)

22. The ACC defines the projects it covers as public housing that is developed, acquired, or assisted by HUD.  It includes all real and personal property, tangible and intangible, which is acquired or held by a PHA in connection with a project covered under the ACC.  (Filing 25, p. 5, ¶ 14; filing 29, p. 1, ¶ 1.)

23. The ACC prohibits CHA from demolishing, disposing of, or encumbering any project or portion thereof without the prior approval of HUD, and expressly prohibits CHA from pledging the assets of any project as collateral for a loan. (Filing 25, p. 5, ¶ 15; filing 29, p. 1, ¶ 1.)

24. On or about July 29, 2004, after discovering that CHA had used public housing funds for the operation and maintenance of Crown Villa, a non-public housing development, without HUD approval, HUD notified CHA to immediately discontinue the use of HUD's public housing funds for the non-public housing development.  (Filing 25, p. 5, ¶ 16; filing 29, p. 1, ¶ 1.)

25.  In 2006, the HUD Office of Inspector General audited CHA's public housing program and found inappropriate expenditures.  CHA agreed with HUD's audit findings and HUD's recommendation that CHA repay its public housing program from non-federal sources, among other things. (Filing 25, p. 7, ¶ 20; filing 29, p. 1, ¶ 1.)

26. As a result of CHA's execution of two promissory notes to FNB which pledged as collateral the public housing funds on deposit with FNB for a nonpublic housing related loan to CHA that resulted in FNB's setoff of five (5) CHA accounts, HUD debarred the former Executive Director and three former members of CHA's Board of Directors for violating Sections 7 and 9 of the ACC.  The Debarring Official's Determination was issued on September 5, 2008, and prevents four individuals, the former Executive Director and three former board members of CHA, from future participation in HUD programs for a three year period from the date of the action.  (Filing 25, p. 7, ¶ 21 & n. 8; filing 29, p. 1, ¶ 1.)

27. Since the setoff, FNB has had possession and control of all funds that were subject to the setoff.  (Filing 25, p. 8, ¶ 22; filing 29, p. 1, ¶ 1.)

8

28. Despite HUD's and CHA's requests, FNB has not released the setoff funds. (Filing 25, p. 8, ¶ 23; filing 29, p. 1, ¶ 1.)

For the reasons stated,

IT IS ORDERED that:

1. The defendants' motion for summary judgment (filing 18) is granted in part and denied in part, as follows:
   a. All claims against First National of Nebraska, Inc., are dismissed with prejudice.
   b. In all other respects, the motion is denied.

2. The plaintiff's motion for summary judgment (filing 24) is denied.

3. Pursuant to Federal Rule of Civil Procedure 56(d)(1), the material facts that have been found by the court to be not genuinely at issue, as listed above in 28 numbered paragraphs, shall be treated as established in the action.

February 9, 2009.                    BY THE COURT:

                                     s/ *Richard G. Kopf*
                                     United States District Judge